# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

BENJAMIN C. WOLFE,

        Plaintiff,

v.                                                                                           No. CIV 97-1282 BB/LFG

LOS LUNAS SCHOOLS BOARD OF
EDUCATION and NANCY SEEMAN,
DAVE VICKERS, JOHN KERN, DANIEL
HAWKES and FRED LUNA, individually and
in their capacities as members of the Los
Lunas Schools Board of Education,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants' motion for summary judgment (Doc. 23). Having considered the submissions of the parties and the applicable law, the Court determines that Defendants' motion should be DENIED.

In this Title IX retaliation and First Amendment case, Defendants have moved for summary judgment on the ground Plaintiff has not raised a genuine issue of material fact regarding his retaliation claims. "Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. On a motion for summary judgment, the issue is

"not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider Defendants' motion in light of these standards.

The main issue in this case is whether Plaintiff's coaching contract was not renewed because he was a trouble-maker, difficult to get along with, a bad role model for his players, and an unfair coach, or because (at least in part) he had engaged in conduct protected by Title IX and the First Amendment. Defendants have focused their argument on the causation issue, maintaining Plaintiff has provided insufficient evidence tending to show the failure to renew his contract had anything to do with his protected activities. For purposes of this motion Defendants have conceded Plaintiff engaged in protected conduct under both Title IX and the First Amendment. Also, Defendants have not presented evidence or argument attempting to establish that Defendants are not liable for the conduct of the school administrators in this case. That is, they have not argued that it is their own motivation, rather than the motivation of one or more of the administrators, that should be the sole area of inquiry for the Court. Compare Ware v. Unified School Dist. No. 492, 902 F.2d 815, 818-19 (10th Cir. 1990) (where school board was final decisionmaking authority under state law, and did not delegate that authority, board's actions were analyzed under deliberate-indifference standard; administrator's retaliatory motive, standing alone, would not be sufficient to impose liability on school board).

While the causation question is a close one, the Court finds Plaintiff has adduced sufficient evidence to raise a genuine issue of fact as to that issue. It is true there is ample evidence tending to show Plaintiff had alienated many of his fellow coaches and teachers, as well as administrators in the Los Lunas school system and some parents of his athletes. One view of the evidence is that Plaintiff's behavior, while tolerated in the past, finally became too divisive and controversial to justify retaining him as a coach. However, there is also evidence, viewed in the light most favorable to Plaintiff, that would support a finding that his Title IX and free-speech activities played a role in Defendants' decision to refrain from rehiring him as coach of the girls' basketball team.

For purposes of this motion it is this evidence which must be the focus. Until Plaintiff became involved in the Title IX grievance process he had apparently received positive evaluations as a coach and had been recommended for licensure as a coach. There was also evidence that the document signed by many fellow coaches, criticizing Plaintiff, was intended at least in part to respond to some of Plaintiff's Title IX-related speech.[1] This document, while initially rejected by Principal Seiler as insufficiently documented, was later used to justify Seiler's recommendation against rehiring Plaintiff, since it was evidence Plaintiff could not get along with other coaches in the school system. Furthermore, the evidence is unclear as to another alleged ground for the adverse recommendation -- the fact that Plaintiff was ejected from a game during which he was a spectator. There was evidence

---

[1] Defendants argue this document was written and submitted before the Title IX complaint was filed with the federal Office of Civil Rights ("OCR") in Denver. While this may be true, there was direct testimony that it was intended to respond to the grievances submitted by a group of parents supporting Plaintiff and with whose activities Plaintiff was closely identified. These grievances were the local precursors to the OCR complaint. Defendants' timing argument, therefore, is without merit.

3

a different coach, Robert Salazar, had also been ejected from a game at some undetermined time but had received no greater punishment than a one-game suspension and a reprimand.[2]

Other evidence tending to raise an issue of fact as to the administrators' motivations includes Principal Seiler's different account of the evaluation process, when compared to Athletic Director Randy Castillo's explanation. Castillo testified the negative evaluation of Wolfe was prepared entirely by Seiler, while Seiler testified Castillo participated fully in the process and agreed with the recommendation. It is possible Castillo's memory is faulty or affected by his own legal claims involving the school. It is also possible, however, that Seiler was attempting to shift responsibility to make it appear others shared the credit or blame for the initial negative recommendation concerning Plaintiff. This possible indication of blame-shifting raises a question concerning Seiler's motivation for the recommendation. As to Superintendent Pomeroy, there was evidence that he became frustrated with the activities of Plaintiff's parent group and wrote a letter indicating the school would not be as cooperative in responding to the group's complaints. At approximately the same time, he approved Seiler's recommendation that Plaintiff not be rehired. Again, it is possible Pomeroy's frustration and action were entirely justified. It is also possible, however, that his frustration was a response to genuine Title IX-type concerns, and that this frustration played a role in his recommendation to the school board that Plaintiff not be retained as coach.

Plaintiff has also pointed to evidence that Defendants, even though aware of the possibility of retaliation in this case, failed to raise that possibility in their deliberations concerning Plaintiff's future as a coach. This silence may imply Defendants conducted no independent investigation of the

---

[2]Defendants also make a timing argument regarding this incident, claiming it occurred in 1993. The Court has reviewed the deposition cites provided by Defendants and finds it is not clear when the incident took place. (Salazar depo. p. 11)

retaliation question. Under Ware, this inaction in the face of knowledge of possible retaliation could rise to the level of deliberate indifference of Plaintiff's constitutional or statutory rights. 902 F.2d at 819-20.

Based on the foregoing, it appears there are a number of disputed material facts in this case. These include whether, if there was retaliation in this case, the retaliation was directed at Plaintiff's Title IX or First Amendment activities, as opposed to unprotected conduct; whether he was not rehired dismissed as coach solely because he could not get along with other coaches, attempted to control decisions (such as middle-school coaching assignments) that were outside his legitimate area of control, was unfair to his players, and was a poor role model; or whether he was unfairly viewed as a trouble-maker because of his insistence on equal treatment for girls' and boys' athletics in the Los Lunas school system. The Court will therefore deny Defendants' motion for summary judgment.

**O R D E R**

For the above stated reasons, Defendants' motion for summary judgment (Doc. 23) is DENIED.

Dated at Albuquerque this 1st day of December, 1998.

_____
**BRUCE D. BLACK**
United States District Judge

Counsel for Plaintiff:
K. Lee Peifer
Angela B. Cornell
The Law Offices of K. Lee Peifer
108 Wellesley SE
Albuquerque, New Mexico 87106

Counsel for Defendants:
Elizabeth L. German
Brown & German
3909 Juan Tabo, NE
Suite 2
Albuquerque, New Mexico 87111