IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

BENJAMIN C. WOLFE,

        Plaintiff,

v.                                                                                           No. CIV 97-1282 BB/LFG

LOS LUNAS SCHOOLS BOARD OF
EDUCATION and NANCY SEEMAN,
DAVE VICKERS, JOHN KERN,
DANIEL HAWKES, and FRED LUNA,
individually and in their capacities as
members of the Los Lunas Schools Board
of Education,

        Defendants.

## COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER came on for a trial to the Court without a jury on December 9, 10, 14, and 15, 1998, and all evidence having been presented, and the parties having submitted their respective proposed findings of fact and conclusions of law, the Court now makes the following findings of fact and conclusions of law:

### Findings of Fact

1.     Plaintiff alleges retaliation in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and deprivation of rights guaranteed by the First Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

2. Plaintiff was employed by the Los Lunas schools as a teacher from January 1995 through December 1998.

3. From October 1993 until April 8, 1997, Plaintiff was also employed by annual contracts to be the Los Lunas girls' varsity basketball coach.

4. Plaintiff informed the school district that he would pursue the issue of salary disparity between the boys' and girls' basketball coaches as early as December 1995.

5. In early 1996, interested parents and community members formed an organization called the Committee for Los Lunas Athletics ("CLLA").

6. Plaintiff was an active member of the CLLA. During the time Plaintiff was girls' basketball coach and a member of the CLLA, the CLLA made a complaint to the United States Department of Education, Office of Civil Rights ("OCR"), alleging that Los Lunas schools had violated Title IX.

7. Even before the complaint was filed, Los Lunas Superintendent, Dr. Fred Pomeroy, directed Maribelle Ogilvie, Assistant Superintendent, to address the Title IX issues raised by the CLLA. He also directed Randy Castillo to address the other concerns of the CLLA. Dr. Pomeroy had these administrators, as well as the Finance Director, Art Castillo, meet with CLLA members in an effort to resolve their concerns.

8. In 1996, prior to the filing of the OCR complaint, the salaries of the girls' and boys' basketball coaches were equalized.

9. On August 25, 1997, the School District entered into a written "Commitment to Resolve Los Lunas Public Schools OCR Case Number 08971004."

10. After the Title IX complaint was filed, Gary Zens, a very active and vocal member of the CLLA, was hired to be the Middle School girls' basketball coach.

11. On August 12, 1996, the CLLA also presented written "Grievances in the Athletic Department" ("Grievances") to Superintendent Pomeroy and to Randy Castillo, Plaintiff's immediate supervisor and the Athletic Director. Along with several other athletic coaches, Castillo's performance was challenged in the Grievances. Plaintiff was among the CLLA members who presented and personally spoke out in favor of the written Grievances.

12. Dr. Pomeroy met with the CLLA several times and directed his staff to provide information to, and address the concerns of, the CLLA on both Title IX issues and the various Grievances regarding all aspects of the athletic program. However, after responding to numerous letters and requests for information, Dr. Pomeroy advised the CLLA that the schools would no longer respond to "the paper blizzard" of requests.

13. The Grievances were posted on the bulletin board in the coaches' office at Los Lunas High School ("LLHS"). Additional copies were made and distributed, and within a week or two everyone at the school knew about the Grievances. Several people within the athletic department were aggravated by various statements in the Grievances.

14. Guy Seiler, LLHS Principal, directed Randy Castillo to devise a new coaching evaluation form. This document was used for all coaching evaluations within the District during the 1996-97 school year.

15. Plaintiff's evaluation for the 1996-97 school year indicated that his performance was unsatisfactory in the following areas: 1) provides experiences appropriate to the growth and development level of adolescents; 2) is a positive role model for athletes; 3) promotes all athletic programs; 4) encourages the athlete to participate in more than one program; 5) works closely and cooperates with all coaches and programs.

16. Plaintiff clearly did not work well with other coaches. This is evidenced by a letter to Principal Seiler from several coaches detailing problems they had with Plaintiff. Many of these issues had arisen before the CLLA presented its Grievances to the Schools, but the Grievances definitely were fuel for existing animosities. Plaintiff conceded that although he disagreed with their version, the coaches who signed the letter truly believed in the version of the events set forth in the letter.

17. Several coaches and others involved with the Los Lunas Athletic Department testified at the instant trial regarding controversies surrounding Plaintiff's involvement with girls' basketball. A few of those controversies originally derived from Plaintiff's assertion of Title IX issues, but most did not.

18. Plaintiff also had problems getting along with school administrators such as Priscilla Lolly Fernandez, Principal of the Mesa Vista Middle School. The evidence indicated that after repeated disagreements about how the Middle School girls' basketball coach should be appointed, Plaintiff met with Mrs. Fernandez and the Superintendent to discuss her concerns. When she offered to compromise and try to work with him, he said he did not believe he needed to respond and refused to shake her hand.

4

19. Superintendent Pomeroy had numerous discussions with Plaintiff regarding his interactions with other members of the school community.

20. When Plaintiff was ejected from a girls' junior varsity basketball game he was watching, he was reprimanded and counseled that such action was inappropriate and warned that a second offense could result in termination. Within a few weeks of the ejection, Plaintiff received a technical foul while coaching.

21. Robert Salazar, the boys' basketball coach, had also been ejected from a game in some prior year and he was also reprimanded and counseled about further offenses.

22. Dr. Pomeroy and Mr. Seiler were concerned about Plaintiff's relationship with the parents of some players, with Plaintiff's practice of demoting varsity players to the "C" team as a disciplinary measure, and with Plaintiff's refusal to allow players to miss practice for religious classes or community events.

23. Dr. Pomeroy testified Plaintiff's ejection, followed shortly thereafter by the technical foul, was "the straw that broke the camel's back" for him.

24. On April 8, 1997, after receipt from Superintendent Pomeroy of a recommendation not to renew, the Board voted not to renew Plaintiff's coaching contract after the 1996-97 school year. Dr. Pomeroy's recommendation was based in part upon the recommendation not to renew from Principal Seiler. However, the same parties recommended that Plaintiff's teaching contract be renewed and Plaintiff remained in his teaching position until he resigned in December 1998.

25. The employment of Athletic Director Randy Castillo was involuntarily terminated at the end of the 1996-97 school year.

26. The coaching contract of Robert Salazar, the boys' basketball coach, was also not renewed after the 1996-97 school year.

27. The coaching contract of Mike Jaime, the football coach, was also not renewed after the 1996-97 school year.

28. Testimony presented by Plaintiff of coaches, parents, and students who supported him indicated there were differing opinions regarding the appropriateness of Plaintiff's behavior and policies as a coach, but did not provide any direct evidence of retaliation for his Title IX advocacy.

29. There is no evidence that any of the Defendants intended to retaliate against Plaintiff because of the Title IX complaint filed by the CLLA or that they were "deliberately indifferent" to discovering evidence of such retaliation; in fact, the School District made every reasonable effort to resolve all Title IX issues as quickly as possible.

30. The Los Lunas School Board is comprised of five members.

31. Several of the members of the Board heard from parents, faculty, and administrators about Plaintiff's inability to cooperate both before and during the Board's hearing on Plaintiff's contract renewal.

32. John Kern, one of the new Board members who testified, stated that prior to the Board meeting he met with one of his friends who was a member of the CLLA and that he reviewed the materials his friend provided in support of Plaintiff's retention.

33. Mr. Kern testified that when he went to the meeting at which Plaintiff's contract would be voted upon, people lobbied him from both sides. Mr. Kern said he expected Plaintiff to convince him which way to vote. He understood that the controversy related to the way Plaintiff treated students and behaved on the basketball court as well as Plaintiff's interactions with other school personnel. During the Board meeting, Mr. Kern found Plaintiff was loud, arrogant, and abrasive. This confrontational approach caused Mr. Kern to vote against renewal of Plaintiff's coaching contract.

34. Board President Nancy Seeman said she knew, based on many previous conversations she had with Plaintiff, that he had a difficult time getting along with several members of the school community. Ms. Seeman was also aware of numerous difficulties in the Athletic Department in which Plaintiff was variously involved. Ms. Seeman testified she liked Plaintiff on a personal level and would have voted to renew his contract if he had given any indication at the Board meeting that he was willing to compromise and work with the school staff and administration. Instead, she also believed Plaintiff exhibited arrogance at the Board hearing and therefore she voted not to renew Plaintiff's coaching contract.

35. Board member Fred Luna testified he was a strong advocate for hiring Plaintiff because Plaintiff was from Los Lunas and he "likes to support local kids." He testified he came to the Board meeting prepared to give Plaintiff the benefit of the

doubt but that Plaintiff's performance at the Board meeting also convinced him Plaintiff should be terminated as a coach.

36. The Court's observation of Plaintiff's demeanor during the trial is consistent with the conclusions of the Board members.

**Conclusions of Law**

1. Title IX prohibits retaliation against those who complain of violations of the Act. *See* 42 U.S.C. § 2000e-3(a); 34 C.F.R. § 100.7(e).

2. In order to prevail on his retaliation claim, Plaintiff must establish a prima facie case that: 1) he engaged in protected activity; 2) adverse action was taken by Defendants subsequent to such protected activity; and 3) there is a causal connection between the activity and adverse action. *Vigil v. City of Las Cruces*, 113 F.3d 1247 (10th Cir. 1997); *Roberts v. Colorado State Bd. of Agric.*, 998 F.2d 824, 832-33 (10th Cir.), *cert. denied*, 510 U.S. 1004 (1993). Defendants have stipulated to the first two elements of the prima facie case of retaliation.

3. Defendants established legitimate, nondiscriminatory reasons for the decisions not to renew Plaintiff's coaching contract, *i.e.*, Plaintiff had persistent difficulty getting along with other coaches, staff members, parents, officials, and administrators on issues not related to Title IX.

4. Plaintiff's evidence that Defendants' legitimate reasons are pretextual is not persuasive.

5. The School Board addressed the Title IX issues in good faith. *Ware v. Unified School Dist. No. 492*, 902 F.2d 815, 818-19 (10th Cir. 1990), suggests that if a school board is advised of the possibility of retaliation, the Board may have a duty to investigate such possibility. The duty set forth in *Ware* requires the Board not be deliberately indifferent to Plaintiff's civil rights. *See also, Gebser v. Lago Vista Indep. Sch. Dist.*, 118 S. Ct. 1989 (1998). This duty can be fulfilled by conducting a good faith investigation of the possibility of retaliation.

6. In this case, a formal investigation by the Board was not necessary, because the majority of the Board had sufficient personal knowledge regarding Plaintiff's performance and the legitimacy of the recommendation not to renew. In fact, a majority of the Board had not decided which way to vote prior to the meeting at which Plaintiff's contract was to be voted on. Each of these members testified that it was Plaintiff's aggressive and uncompromising demeanor at the Board meeting which was the decisive factor for them. The Court finds that under these circumstances, the Board was not "deliberately indifferent" to Plaintiff's rights.

7. Plaintiff did not prove that his Title IX speech was "a motivating factor" in the Board's decision not to renew his coaching contract. *Hom v. Squire*, 81 F.3d 969 (10th Cir. 1996).

8. Plaintiff and Sue Zens both testified about their belief that Plaintiff was a target of retaliation but offered no real evidence of retaliatory motive by the Principal, Superintendent or Board. *See, Purrington v. University of Utah*, 996 F.2d 1025 (10th

Cir. 1993); *Kobrin v. University of Minn.*, 34 F.3d 698 (8th Cir. 1994). Subjective beliefs are not sufficient. *Ning v. Oklahoma Dep't of Env't Quality*, 113 F.3d 1246 (10th Cir. 1997).

9. To the extent Plaintiff's First Amendment claim was based on a violation of Title IX, Plaintiff may not assert such claim. A Section 1983 action cannot be based on a Title IX violation. *Seamons v. Snow*, 84 F.3d 1226, 1234 (10th Cir. 1996).

10. To the extent Plaintiff is asserting a constitutionally based First Amendment retaliation claim, Plaintiff did not establish a prima facie case and Defendants are entitled to a judgment as a matter of law.

A Judgment consistent with these findings of fact and conclusions of law should be drawn up by counsel for Defendants and presented to the Court.

DATED at Albuquerque this 9th day of February, 1999.

                                                  **BRUCE D. BLACK**
                                                  United States District Judge

Counsel for Plaintiff:

K. Lee Peifer, Angela B. Cornell, Albuquerque, NM

Counsel for Defendant:

Elizabeth L. German, Albuquerque, NM